2011 Ark. 430

**Rodney Tyrone WEBB, Appellant,**

**v.**

**STATE of Arkansas, Appellee.**

**No. CR 10–1146.**

Supreme Court of Arkansas.

Oct. 13, 2011.

court after the jury could not reach a unanimous verdict on sentence. We assumed jurisdiction of this case pursuant to Ark. Sup.Ct. R. 1–2(b)(5)(2011). On appeal, he argues only that the circuit court erred in denying his motion to suppress. We affirm.

Appellant was charged by criminal information on July 1, 2009, with one count of second-degree battery and one count of possession of cocaine with intent to deliver.[1] On October 14, 2009, appellant filed a motion to suppress the cocaine found on his person, arguing that it was seized in violation of his right to be free from illegal searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution and article |₂2, section 15 of the Arkansas Constitution. Appellant asserted that the search took place after a pretextual traffic stop and was done presumably under the auspices of a search for weapons. Appellant acknowledged that the arresting officer claimed that appellant gave his consent to the search, but appellant argued that because the traffic stop was based solely on unsubstantiated and unreliable information, any consent granted by him was illegally obtained. Appellant also alleged that any consent given by him was given without having the benefit of any proper warnings necessary to make his consent voluntary.

A hearing on the motion was held on January 25, 2010. Prior to the presentation of evidence, the court was informed that appellant was on parole at the time of the search and that he had signed a parole agreement, although the specific agreement signed by appellant was not introduced at the hearing. The State presented two witnesses, Deputy Jeremy Chapman and Deputy Rex Davis, both employed by the Drew County Sheriff's

James Earl Hensley, Jr., Little Rock, AR, for appellant.

Dustin McDaniel, Att'y Gen., by: Rachel Hurst Kemp, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

|₁Appellant Rodney Webb was convicted by a Drew County jury of possession of cocaine in violation of Ark.Code Ann. § 5–64–401 (Repl.2005), and sentenced to twenty-two years' imprisonment by the circuit

---

1. The second-degree battery charge was later    nolle prossed at trial.

Department, who testified regarding the events that culminated in the search and seizure of appellant on June 26, 2009. That day, Deputy Davis received a tip from a confidential informant that appellant was dealing cocaine from his vehicle. Davis relayed this information to Deputy Chapman and informed him that appellant was in his vehicle in Wilmar, Arkansas, where Davis had seen him commit a traffic violation. Chapman testified that he initiated a traffic stop after locating appellant's vehicle in Wilmar when it crossed the center line by almost three feet. He testified that after approaching the vehicle, he asked appellant to exit and for consent to search it. Chapman testified that appellant handed over the keys and said, "I don't have anything to hide." Chapman proceeded to search the vehicle but found nothing ⌊3incriminating. He stated that he then asked to pat down appellant's person, received consent, and felt a hard, foreign object in appellant's groin area. Chapman testified that there was a "short struggle" at that point, but with the help of other deputies, appellant was detained and a clear plastic vial containing nine white rock-like substances was found in his groin area. Chapman admitted that he asked to search appellant's person because Davis had indicated that the information he had received was that appellant was hiding crack cocaine in his groin area.

Following the State's presentation of evidence, the circuit court announced that the focus of the suppression issue was whether appellant had signed a parole agreement waiving his right to consent to searches by law enforcement. The court took the suppression issue under advisement until the parties could file briefs and obtain the actual parole agreement signed by appellant.

On February 4, 2010, the State filed its brief, arguing that appellant did not have standing to challenge the search (1) because as a parolee, he was still in the custody of the Arkansas Department of Correction and (2) because he signed a parole agreement agreeing to warrantless searches at the direction of or by his parole officer. Alternatively, the State contended that the search was valid incident to an investigatory stop pursuant to Rule 3.1 of the Arkansas Rules of Criminal Procedure. Attached as an exhibit to the brief was a "Permission for Warrant Less Search" signed by appellant on February 21, 2008, which stated that he gave his parole officer or any law enforcement officer the consent to search his person, vehicle, residence, or property under his control without a warrant if his parole officer had reasonable grounds to believe that appellant had violated the terms of his parole or may have ⌊4committed any federal or state crime. Also attached and signed by appellant in February 2008 were his conditions of release, which stated that he "must submit [his] person, place of residence, and motor vehicles to search and seizure at any time, day or night, with or without a search warrant, whenever requested to do so by any Department of Community Punishment Officer."

On February 5, 2010, appellant filed his brief on the suppression issue, maintaining that the advance consent to search that appellant signed as a condition of his parole only allowed searches by his parole officer or a Department of Community Correction officer at the behest of his parole officer. Appellant argued that it did not allow warrantless searches by any and all law enforcement officers. Moreover, appellant averred that the traffic stop and search of appellant "was a classic pretextual stop and search" and that the items seized from appellant should have been suppressed. Also on February 5, 2010, the

circuit court entered a two-sentence order denying appellant's motion to suppress. That order did not make any specific findings of fact or conclusions of law.

On February 12, 2010, appellant filed a motion for rehearing, arguing that at the hearing on January 25, the State had been allowed to present witnesses on its behalf with regard to the suppression issue but that appellant had not been afforded the same opportunity because the hearing had been concluded so the parties could research and brief the issue regarding appellant's parole status. Appellant contended that despite the hearing's abrupt end, the circuit court had entered an order denying the suppression motion. Appellant maintained that a hearing should be conducted so that he could present witnesses on his behalf. Also on February 12, appellant filed a motion for findings of fact and conclusions of law, asking the circuit court to explain its reasoning for denying suppression so as to create an appropriate record for appellate purposes.

On the day appellant's jury trial was scheduled to begin, the circuit court agreed to continue the suppression hearing to allow appellant to testify. Appellant testified that after Deputy Chapman approached the vehicle, he asked appellant to step out of the car. Chapman asked if appellant had any weapons on him and patted him down. Appellant stated that Chapman and another deputy, Chris Owen, discovered that appellant's passenger had an active warrant and placed him under arrest. Thereafter, Chapman searched appellant's vehicle. Appellant stated that he did not give consent to search the vehicle. Appellant testified that after finding nothing in the vehicle, Chapman again searched appellant's person, focusing on his groin area. Appellant stated that he moved when Chapman touched his groin area, and as a result, the officers put him on the ground, unzipped his pants, and pulled them down. Appellant testified that he never gave consent to search his person.

The circuit court then ruled from the bench that the search of appellant's person was limited in nature; that as a parolee, appellant had no expectation of privacy when stopped in an investigatory matter; and that this was a search incident to an investigatory stop. Although the circuit court believed Deputy Chapman did not need appellant's consent to pat him down, the court found that the officer had received consent.

Thereafter, appellant's jury trial was conducted and he was found guilty of possession of cocaine. However, the jury deadlocked on sentence. The court determined that it would sentence appellant and excused the jury. Thereafter, during an in-chambers discussion, appellant's counsel asked the court for more specific findings on the motion to suppress. The court agreed in order to complete the record and found that Deputy Chapman's testimony that he initiated the stop after appellant had crossed the center line was credible; that after the stop, the officer had a right to conduct a pat-down search; that the stop was a valid investigatory stop; that appellant was on parole and had a "stepped-down status as far as the right to privacy"; that consent to search was given; and that the frisk was not overly intrusive.

At a separate sentencing hearing held on April 5, 2010, the circuit court sentenced appellant as a habitual offender to twenty-two years in prison to run concurrent to the sentence appellant was serving after revocation. On the same day, a judgment and commitment order was entered. An amended judgment and commitment order was entered on April 12, 2010. Ap-

pellant filed a timely notice of appeal on May 3, 2010.

Appellant's sole point for reversal is that the circuit court committed reversible error by denying his motion to suppress on the basis that appellant was provided a lesser expectation of privacy because of his status as a parolee. Appellant contends that Deputy Chapman had no authority to search appellant's person based on the parolee consent-to-search agreement because based on the terms and conditions of that agreement, any search was limited to parole officers or Department of Community Punishment officers.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or ⌐probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Lee v. State*, 2009 Ark. 255, 308 S.W.3d 596. We defer to the superiority of the circuit judge to evaluate the credibility of witnesses who testify at a suppression hearing. *Montgomery v. State*, 367 Ark. 485, 241 S.W.3d 753 (2006).

We need not address the issue posited by appellant on appeal relating to his status as a parolee because we affirm the circuit court's denial of suppression on the basis that the search of appellant's person was consensual following a valid traffic stop. The circuit court articulated several grounds for denying the suppression motion. Notably, the circuit court focused more on appellant's status as a parolee than on other grounds for denial. Howev-

er, it did find that Deputy Chapman made a valid traffic stop and had consent to search. Because we are satisfied that those findings are not clearly erroneous, we affirm.

First, Deputy Chapman's initial decision to pull appellant over was entirely legal. In order for a police officer to make a traffic stop, he must have probable cause to believe that the vehicle has violated a traffic law. *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation that the officer believed to have occurred. *Id.* Here, Chapman testified at the suppression hearing that he observed appellant cross the center line of the street by at least three feet. *See* Ark.Code Ann. § 27–51–301 (Supp.2009) ⌐(requiring that vehicles be driven on the right half of the roadway). Appellant did not contest that he had crossed the center line. Further, the circuit court specifically found that Deputy Chapman was credible on this point. Thus, the initial traffic stop was neither inherently unconstitutional nor invalid.

Next, we turn to the search of appellant's person. Arkansas Rule of Criminal Procedure 11.1 provides that "[a]n officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search or seizure." Additionally, a consensual search shall not exceed, in duration or scope, the limits of the consent given. Ark. R.Crim. P. 11.3. The State has the burden of proving by clear and convincing evidence that consent to search was freely and voluntarily given and that there was no actual or implied duress or coercion. Ark. R.Crim. P. 11.1(b). The United States Supreme

Court has held that the test for a valid consent to search is that the consent be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *see also Welch v. State*, 364 Ark. 324, 219 S.W.3d 156 (2005). This court has stated that knowledge of the right to refuse consent to search is not a requirement to prove the voluntariness of consent. *Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002).

Deputy Chapman's version of the events on the day in question are different than appellant's version. Deputy Chapman testified that he asked for permission to search appellant's person and that appellant consented to the search. During the search, Deputy Chapman felt a hard object in appellant's groin area, at which time appellant began to struggle with the officers, and they detained him and discovered the contraband. In contrast, appellant claimed that he never consented to the search of his person and that Deputy Chapman searched him twice—a pat-down search before searching the vehicle and a more focused pat-down following the vehicle search.

After hearing this conflicting testimony, the circuit court determined that consent was given and that the frisk was not overly intrusive. It is apparent that the circuit court found the testimony of Deputy Chapman to be more credible than the testimony of appellant. As we stated in *State v. Nichols*, 364 Ark. 1, 216 S.W.3d 114 (2005), this court has never wavered from its longstanding rule that it is the province of the trial court, not this court, to determine the credibility of witnesses. Moreover, the record is devoid of any evidence that appellant was coerced into consenting.

Rather, Deputy Chapman testified that appellant willingly conceded to the search. As such, we affirm the circuit court's decision to deny suppression.

Affirmed.